**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Residence Mutual Insurance Company,<br><br>                    Plaintiff,<br><br>     v.<br><br>Travelers Indemnity Company of Connecticut and Does 1-10,<br><br><br>                    Defendants. | CV 13-09141-RSWL (AGRx)<br><br>**ORDER RE: PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** [18] **AND DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT** [20] |

     Currently before the Court are Plaintiff Residence Mutual Insurance Company's ("Plaintiff") Motion for Summary Judgment [18] and Defendant Travelers Indemnity Company of Connecticut's ("Defendant") Cross-Motion for Summary Judgment [20].  The Court, having reviewed all papers submitted pertaining to these Motions, **NOW FINDS AND RULES AS FOLLOWS:** The Court **GRANTS in part, DENIES**

**in part** Plaintiff's Motion for Summary Judgment and
**GRANTS in part, DENIES in part** Defendant's Cross-Motion
for Summary Judgment.

## I. BACKGROUND

Plaintiff issued a Homeowners Policy to Michael H.
Chu and Susan Chu as the named insureds ("Plaintiff's
Policy").  Pl.'s Statement of Uncontroverted Facts and
Conclusions of Law ("Pl.'s SUF") # 1.

Defendant issued a Commercial General Liability
policy to Daeil America Corporation, dba Temeku Hills
Golf and Country ("Temeku Hills") as the named insured
("Defendant's Policy").  Id. at # 2.  Mrs. Chu, as a
renter or operator of a golf cart at Temeku Hills, was
made an additional insured of Defendant's Policy by the
Golf or Country Club Facilities Xtend Endorsement
("Country Club Endorsement").  See id. at # 3.

On or about February 18, 2011, Mrs. Chu was driving
a golfmobile at Temeku Hills when she allegedly struck
and injured Maria Haugh with a golfmobile ("the
Golfmobile Accident").  Id. at # 4.  As a result of the
Golfmobile Accident, Maria Haugh filed an action for
bodily injury against Mrs. Chu ("Underlying Action").
Id. at # 5.  Mrs. Chu tendered defense of the
Underlying Action to Plaintiff, and Plaintiff agreed to
provide a defense and indemnity to Mrs. Chu under
Plaintiff's Policy.  Id. at # 6.

Plaintiff requested that Defendant participate in
the defense and indemnity of Mrs. Chu with respect to

2

1   the Underlying Action, asserting that Defendant
2   provided coverage to Mrs. Chu as a person legally
3   responsible for the use of a golfmobile she rented from
4   Temeku Hills.  Id. at # 10.  Defendant rejected said
5   request and refused to participate in the defense of
6   Mrs. Chu.  Id. at # 11.  However, Defendant paid
7   $100,000 towards the settlement of the Underlying
8   Action.  Id. at # 20.  Plaintiff also paid $100,000
9   toward the settlement while reserving the right to seek
10  equitable contribution from Defendant in this Action.
11  Id.  On February 7, 2014, the Underlying Action was
12  settled for $200,000 and is in the process of being
13  dismissed against Mrs. Chu.  Id. at # 9.

14      Plaintiff alleges that Defendant must participate
15  in the defense and indemnity of Mrs. Chu as an insurer
16  with respect to the Underlying Action on a pro rata
17  basis according to the respective liability limits of
18  the respective policies.  Compl. ¶ 21(a).  Plaintiff's
19  Policy has a Personal Liability Limit of $300,000.
20  Pl.'s SUF # 14.  Defendant's Policy has a General
21  Liability Each Occurrence Limit of $1,000,000.  Id. at
22  # 15.

23      Plaintiff also alleges that Defendant must
24  reimburse Plaintiff for amounts Plaintiff has expended
25  defending Mrs. Chu in the Underlying Action in excess
26  of the amount of the equitable share Plaintiff was
27  required to pay.  Compl. ¶ 21(b).
28

1    Plaintiff paid all of Mrs. Chu's defense costs -
2  $11,500 - incurred in the Underlying Action.  Pl.'s SUF
3  # 7.  Plaintiff contends that the amount it paid in
4  defense costs is in excess of $2,645.00 - what
5  Plaintiff believes is its equitable pro rata share for
6  defense costs.  Id.  Plaintiff also alleges that it
7  paid $100,000 to settle the Underlying Action, which is
8  in excess of $46,000 - what Plaintiff believes is its
9  equitable pro rata share for settlement costs.  Id. at
10 # 8.

11   Defendant removed this Action from Los Angeles
12 Superior Court to this Court on December 11, 2013 [1].
13 On March 19, 2014, Plaintiff filed its Motion for
14 Summary Judgment [18].  On April 2, 2014, Defendant
15 filed its Opposition to Plaintiff's Motion for Summary
16 Judgment and also filed a Cross-Motion for Summary
17 Judgment [20].  Plaintiff filed a Reply in support of
18 its Motion for Summary Judgment on April 9, 2014 [23]
19 and an Opposition to Defendant's Cross-Motion for
20 Summary Judgment on April 16, 2014 [24].  Defendant
21 filed a Reply in support of its Cross-Motion for
22 Summary Judgment on April 23, 2014 [25].

23   Plaintiff presently moves for summary judgment on
24 its two claims for declaratory relief and equitable
25 contribution.  Specifically, Plaintiff seeks an order
26 that (1) Defendant must participate in the defense and
27 indemnity of Mrs. Chu with Plaintiff and share the
28 costs on a pro rata basis and (2) Plaintiff is entitled

to equitable contribution from Defendant with respect
to the defense and indemnity costs Plaintiff incurred
as to the Underlying Action.

Defendant also presently moves for summary
judgment.  As to Plaintiff's first cause of action for
declaratory relief, Defendant moves for summary
judgment declaring that Defendant had no obligation to
defend Mrs. Chu or to pay any portion of the $200,000
settlement in the Underlying Action.  Defendant
requests that the Court order Plaintiff to reimburse
Defendant for the $100,000 that Defendant paid to fund
the settlement.  As to Plaintiff's second cause of
action for equitable contribution, Defendant moves for
summary judgment declaring that Defendant has no legal
or equitable obligation to contribute to Plaintiff for
the defense and indemnity of the Underlying Action.
Alternatively, if the Court determines that the Parties
are obligated to share the loss, Defendant maintains
that the cost of defending and settling the Underlying
Action should be shared equally rather than allocating
the loss according to the ratio of policy limits.
Cross-Mot. 1:23-28.

The hearing for Plaintiff's Motion for Summary
Judgment was originally set for April 23, 2014, but the
Court continued the hearing for Plaintiff's Motion for
Summary Judgment to be heard with Defendant's Cross-
Motion for Summary Judgment [21].  Both motions were

set for hearing on May 7, 2014 and were taken under
submission on May 2, 2014 [26].

## II. LEGAL STANDARD

Summary judgment is appropriate when there is no
genuine issue of material fact and the moving party is
entitled to judgment as a matter of law.  Fed. R. Civ.
P. 56(c).  A fact is "material" for purposes of summary
judgment if it might affect the outcome of the suit,
and a "genuine issue" exists if the evidence is such
that a reasonable fact-finder could return a verdict
for the non-moving party.  <u>Anderson v. Liberty Lobby,
Inc.</u>, 477 U.S. 242, 248 (1986).  The evidence, and any
inferences based on underlying facts, must be viewed in
the light most favorable to the opposing party.
<u>Twentieth Century-Fox Film Corp. v. MCA, Inc.</u>, 715 F.2d
1327, 1329 (9th Cir. 1983).

Where the moving party does not have the burden of
proof at trial on a dispositive issue, the moving party
may meet its burden for summary judgment by showing an
"absence of evidence" to support the non-moving party's
case.  <u>Celotex v. Catrett</u>, 477 U.S. 317, 325 (1986).

The non-moving party, on the other hand, is
required by Fed. R. Civ. P. 56(c) to go beyond the
pleadings and designate specific facts showing that
there is a genuine issue for trial.  <u>Id.</u> at 324.
Conclusory allegations unsupported by factual
allegations are insufficient to create a triable issue
of fact so as to preclude summary judgment.  <u>Hansen v.</u>

1   United States, 7 F.3d 137, 138 (9th Cir. 1993).  A non-
2   moving party who has the burden of proof at trial must
3   present enough evidence that a "fair-minded jury could
4   return a verdict for the [non-moving party] on the
5   evidence presented."  Anderson, 477 U.S. at 255.

6        In ruling on a motion for summary judgment, the
7   Court's function is not to weigh the evidence, but only
8   to determine if a genuine issue of material fact
9   exists.  Anderson, 477 U.S. at 255.

10                      **III. ANALYSIS**
11  **A.   Request for Judicial Notice**
12        Defendant requests that the Court take judicial
13  notice of District Judge J. Owen Forrester's April 22,
14  2013 order granting the Phoenix Insurance Company's
15  motion for summary judgment and denying Nationwide
16  Property and Casualty Insurance Company's motion for
17  summary judgment, filed in the matter The Phoenix Ins.
18  Co. v. Nationwide Prop. and Cas. Ins. Co., No. 1:12-cv-
19  00660-JOF, in the United States District Court for the
20  Northern District of Georgia.  Request for Judicial
21  Notice, Ex. A.

22        Under Federal Rule of Evidence 201, a court may
23  take judicial notice of "matters of public record."
24  Lee v. City of L.A., 250 F.3d 668, 689 (9th Cir. 2001).
25  Further, a trial court must take judicial notice of
26  facts "if requested by a party and supplied with the
27  necessary information."  Fed. R. Evid. 201(d).  A fact
28  is appropriate for judicial notice only if it is not

subject to reasonable dispute because it is (1)
generally known within the territorial jurisdiction of
the trial court or (2) capable of accurate and ready
determination by resort to sources whose accuracy
cannot reasonably be questioned.  Fed. R. Evid. 201(b).

Facts contained in the public record are
appropriate subjects of judicial notice.  <u>Peel v.
BrooksAmerica Mortg. Corp.</u>, 788 F. Supp. 2d 1149, 1157-
58 (C.D. Cal. 2011) (citing <u>Lee</u>, 250 F.3d at 690).
Therefore, a court may take judicial notice of the
existence of another court's opinion or of the filing
of pleadings in related proceedings.  <u>Peel</u>, 788 F.
Supp. 2d at 1158.

The Court finds that it has been provided with the
necessary information regarding this document.  Because
the document is not subject to reasonable dispute and
is capable of accurate and ready determination by
resort to sources whose accuracy cannot reasonably be
questioned, this Court **GRANTS** Defendant's Request for
Judicial Notice.

**B.**   **<u>Plaintiff's Motion for Summary Judgment and
Defendant's Cross Motion for Summary Judgment</u>**

1.   <u>Interpretation of Insurance Contracts</u>

Under California law, "the interpretation of an
insurance policy is a question of law and follows the
general rules of contract interpretation." <u>TRB Invs.,
Inc. v. Fireman's Fund Ins. Co.</u>, 40 Cal. 4th 19, 27
(2006) (citations omitted).  Words in an insurance

8

policy must be read in their plain and ordinary sense and ambiguity cannot be based on a strained rather than reasonable interpretation of the policy's terms. <u>McKee v. State Farm Fire & Cas., Co.</u>, 145 Cal. App. 3d 772, 776 (1983) (citations omitted).

"Contractual terms of insurance coverage are honored whenever possible. The courts will therefore generally honor the language of excess 'other insurance' clauses when no prejudice to the interests of the insured will ensue." <u>Fin. Pac. Ins. Co. v. Amco Ins. Co.</u>, No. 2:05-cv-2099-GEB-CMK, 2007 WL 685856, at *2 (E.D. Cal. Mar. 5, 2007) (citing <u>Fireman's Fund Ins. Co. v. Md. Cas. Co.</u>, 65 Cal. App. 4th 1279, 1304 (1998)).

However, there are many exceptions to this general rule. <u>Travelers Cas. & Sur. Co. v. Am. Equity Ins. Co.</u>, 93 Cal. App. 4th 1142, 1149-50 (2001). For example, where two or more primary insurers' policies contain excess "other insurance" clauses, the conflicting clauses will be ignored and the loss prorated among the insurers on the ground the insured would otherwise be deprived of protection. <u>Id.</u> (citing <u>Olympic Ins. Co. v. Emp'rs Surplus Lines Ins. Co.</u>, 126 Cal. App. 3d 593, 599 (1981)). Thus, although a true excess insurer has no duty to defend or indemnify until the underlying primary coverage is exhausted, primary insurers with conflicting excess "other insurance"

clauses can have immediate defense obligations.  <u>Id.</u> at
1149-50.

    2.  <u>Plaintiff and Defendant Cover the Same Level of
Liability on the Same Risk as to the Same
Insured</u>

A primary insurer generally has a duty to defend
its insured.  <u>Nat'l Union Fire Ins. Co. of Pittsburgh,
Pa. v. Lawyers Mut. Ins. Co.</u>, 885 F. Supp. 202, 205 (S.
D. Cal. 1995) (citing <u>Olympic Ins. Co.</u>, 126 Cal. App.
at 597).  In contrast, however, an excess insurer
generally has no duty to participate in the insured's
defense or contribute to a settlement on the insured's
behalf until primary coverage has been exhausted.  <u>Id.</u>
(citing <u>Nabisco, Inc. v. Transp. Indem. Co.</u>, 143 Cal.
App. 3d 831, 836 (1983)).

"When two insurers cover the same level of
liability (e.g., both primary or both excess) on the
same risk as to the same insured, courts may require
each to contribute to the cost of defending the claim
or indemnifying the loss." <u>Carmel Dev. Co. v. RLI Ins.
Co.</u>, 126 Cal. App. 4th 502, 507-08 (2005) (citing <u>Md.
Cas. Co. v. Nationwide Mut. Ins. Co.</u>, 81 Cal. App. 4th
1082, 1089 (2000)).  "The right to contribution arises
when several insurers are obligated to indemnify or
defend the same loss or claim, and one insurer has paid
more than its share of the loss or defended the action
without any participation by the others . . . ." <u>Id.</u>
(quoting <u>Fireman's Fund</u>, 65 Cal. App. 4th at 1293).

10

Thus, the Court must first address whether both Plaintiff and Defendant provide the same level of coverage to their mutual insured.  See id. at 509. "This question requires a broader examination of each policy to ascertain the context in which the 'other insurance' provisions appeared."  Id.  Only if the two policies were insuring the same risk at the same level of coverage should the court proceed to determine whether the "other insurance" clauses conflict and thus require equitable proration.  Id. (citing Reliance Nat. Indem. Co. v. Gen. Star Indem. Co., 72 Cal. App. 4th 1063, 1077 (1999)).

Here, Plaintiff issued a Homeowners Policy to Mr. and Mrs. Chu as the named insureds.  Pl.'s SUF # 1; Carande Decl. ¶ 15, Ex. A.  Plaintiff provided primary coverage to Mrs. Chu.  See Dkt. # 18-7.  However, under "Section II - Conditions, Paragraph 8, Other Insurance, Coverage E - Personal Liability," Plaintiff's Policy contains an "other insurance" provision that states "[t]his insurance is excess over any other valid and collectible insurance . . . ."  Id.

Defendant issued a Commercial General Liability policy to Temeku Hills as the named insured that was in full force and effect on the date of the Golfmobile Accident.  Pl.'s SUF # 2.  Further, "Section IV - Commercial Liability Conditions, Paragraph 4, Other Insurance" of Defendant's Policy states that the insurance is primary, and that if other valid and

collectible insurance is available to the insured for a loss covered by Defendant's Policy, Defendant will share with that insurance according to the equal shares method, if applicable.  Dkt. # 18-8 at p.26.

Defendant's Policy also contains a "Country Club Endorsement," which states, in relevant part:

> **B. ADDITIONAL INSURED - GOLF PROS; TENNIS PROS; MEMBERS; USERS OF GOLFMOBILES (EXCESS BASIS)**
>
> 1. WHO IS AN INSURED (Section II) is amended to include as an insured:
>
> > d.   Any person or organization using or legally responsible for the use of golfmobiles loaned or rented to others by you or your concessionaires, but only with respect to their liability caused by the use of the golfmobiles.

Dkt. # 18-8 at p.41-42.

Mrs. Chu was a guest at Temeku Hills and was operating a golfmobile at the time of the Golfmobile Accident.  Pursuant to the terms of Defendant's Policy, Mrs. Chu was made an additional insured of Defendant's Policy by the Country Club Endorsement.  Id.

Defendant points out that the Country Club Endorsement states on its face that Paragraph 4 is amended to provide that: "[t]his insurance for any person using or legally responsible for the use of a golfmobile is excess over any other insurance, whether primary, excess, contingent, or on any other basis that

1   provides coverage to the user of a golfmobile."  Thus,

2   Defendant argues that coverage for a golfmobile user as

3   an "additional insured" under Defendant's Policy is

4   only provided on an *excess* basis and can never be

5   primary.  Def.'s Reply 3:3-18.  In other words,

6   Defendant argues that it provides only *secondary*

7   *coverage* for golf cart users such as Mrs. Chu.

8       Plaintiff argues, on the other hand, that as

9   additional insureds, guests of the golf club, including

10  Mrs. Chu, were afforded primary insurance in the same

11  manner as the named insured of the policy.  Pl.'s Reply

12  5:13-14.

13      On balance, the Court finds that Plaintiff and

14  Defendant both afford primary coverage to Mrs. Chu.

15  There is a distinction between primary and excess

16  insurance coverage.  <u>Am. Cas. Co. v. Gen. Star Indem.</u>

17  <u>Co.</u>, 125 Cal. App. 4th 1510, 1521 (2005).  As explained

18  in <u>American Casualty</u>:

19      *Primary* coverage is insurance coverage whereby,

20      *under the terms of the policy*, liability

21      attaches *immediately* upon the happening of the

22      occurrence that gives rise to the liability . .

23      . "*excess*" or "*secondary*" insurance is coverage

24      whereby, *under the terms of the policy,*

25      liability attaches only after a predetermined

26      amount of primary coverage has been exhausted.

27  <u>Id.</u> (citing <u>Olympic Ins. Co.</u>, 126 Cal. App. 3d at 597-

28  98).  "Excess" insurance is "*secondary* insurance which

provides coverage after other *identified* insurance is no longer on the risk." <u>Id.</u>  "The identification of the underlying primary insurance may be as to (1) a particular policy or policies that are specifically described or (2) underlying coverage provided by a particular and specifically described insurer." <u>Id.</u> (citing <u>Century Sur. Indem. Co. v. United Pac. Ins. Co.</u>, 109 Cal. App. 4th 1246, 1255 (2003)).  "In short, excess insurance is insurance that is expressly understood by both the insurer and insured to be secondary to specific underlying coverage which will not begin until after that underlying coverage is exhausted and which does not broaden that underlying coverage." <u>Id.</u>

Here, the Court finds that Defendant's Policy affords primary coverage to Mrs. Chu.  Under "Section IV - Commercial General Liability Conditions, Paragraph 4, Other Insurance," Defendant's Policy states that the insurance is primary.  Dkt. # 18-8 at p.26.  Further, contrary to Defendant's argument, the fact that Defendant included: "**USERS OF GOLFMOBILES (EXCESS BASIS)"** in the heading for "additional insureds" in the Country Club Endorsement does not, by itself, transform otherwise primary coverage afforded to Mrs. Chu to excess coverage.  <u>See</u> <u>Mt. McKinley Ins. Co. v. Swiss Reinsurance Am. Corp.</u>, 757 F. Supp. 2d 952, 957 (N.D. Cal. 2010) (noting that the "excess general liability" label on the policies did not make a defendant an

1  excess insurer, because this label did not explain of

2  what insurance the defendant's policies were to be

3  considered "excess").

4      Defendant's Policy as to Mrs. Chu is also not a

5  true "excess only" policy under California law because

6  there is nothing in Defendant's Policy that states it

7  is excess to a particular policy that is specifically

8  described or excess to underlying coverage provided by

9  a particular and specifically described insurer.

10  Nothing in Defendant's Policy states that the coverage

11  afforded to users of golfmobiles was excess over any

12  specifically identified underlying insurance.  See

13  Pl.'s SUF ## 27-28.  In other words, there is no

14  language in Defendant's Policy indicating any

15  underlying insurance to which Defendant's Policy was

16  excess over for users of golfmobiles.  Because

17  Defendant's Policy does not identify any underlying

18  coverage provided by a particular and specifically

19  described primary insurer, Defendant's Policy is not

20  "true" excess coverage.

21      Further, the "other insurance" language in the

22  Country Club Endorsement with regard to coverage for

23  golfmobile users does not change the primary coverage

24  afforded to Mrs. Chu to "excess only" coverage.  The

25  Country Club Endorsement states:

26      This insurance for any person or organization

27      using or legally responsible for the use of a

28      golfmobile is excess over any other insurance,

15

1    whether primary, excess, contingent, or on any
2    other basis that provides coverage to the user
3    of a golfmobile.
4  Dkt. # 18-8 at p.42.
5       The inclusion of an "other insurance" clause in an
6  otherwise primary policy will not convert a primary
7  policy into "true" excess coverage.  <u>AMHS Ins. Co. v.</u>
8  <u>Mut. Ins. Co. of Ariz.</u>, 258 F.3d 1090, 1093 (9th Cir.
9  2001).  In <u>Century Surety</u>, four primary insurers
10 insured a mutual insured.  109 Cal. App. 4th at 1250.
11 One primary insurer, Century, refused to provide a
12 defense because its policy contained an "other
13 insurance" clause stating that "[i]f other valid and
14 collectible insurance is available to any insured . . .
15 then this insurance is excess of such insurance . . .
16 ."  <u>Id.</u> at 1252.  The court noted that "excess"
17 insurance is secondary insurance that provides coverage
18 after other identified insurance is no longer on the
19 risk.  <u>Id.</u> at 1255.  The court further noted that the
20 type of insurance that Century provided was not
21 "excess" insurance.  <u>Id.</u>  Thus, the court held that the
22 excess insurance provision did not render the policy
23 true "excess" coverage and compelled an equitable
24 proration among all four insurers.  <u>Id.</u> at 1256-57.
25      Here, as Plaintiff correctly argues, Defendant's
26 "other insurance" provision did not convert Defendant's
27 otherwise primary policy to "excess" coverage; rather,
28 it merely added a different "other insurance" provision

applicable to the primary coverage otherwise provided to users of golfmobiles.[1]  As noted above, "excess insurance is insurance that is expressly understood by both the insurer and the insured to be secondary to *specific* underlying coverage which will not begin until after that underlying coverage is exhausted and which does not broaden that underlying coverage."  <u>Am. Cas. Co.</u>, 125 Cal. App. 4th at 1521.  Because nothing in Defendant's Policy states that the coverage afforded to users of golfmobiles was excess over any *specifically identified* underlying insurance, Defendant's Policy affords primary insurance to Mrs. Chu.

---

[1] Defendant points the Court to <u>Phoenix Ins. Co. v. Nationwide Prop. and Cas. Ins. Co.</u> in which a court held that the language of a Country Club Endorsement specifically provided that any coverage for golf cart use is on an "excess" basis.  RJN, Ex. A, p.8.  Based on this language, the court held that the Country Club Endorsement was written to provide excess, and not primary coverage to golf cart drivers.  <u>Id.</u> at p.9.  Thus, the court held that the Phoenix Country Club Endorsement was "true excess" coverage, while the two Nationwide policies provided "primary coverage" in these circumstances.  <u>Id.</u> at p.9.  However, the Court finds this authority unpersuasive.  First, the Court notes that this case applies Georgia law and is not binding on this Court.  Additionally, as stated in <u>Century Surety</u>, excess insurance is that which, under the terms of the policy, liability attaches only after a predetermined amount of primary coverage has been exhausted and must provide coverage to specifically *identified* primary insurance.  109 Cal. App. 4th at 1255; <u>see also</u> <u>Fireman's Fund</u>, 65 Cal. App. 4th at 1304.  Here, the Country Club Endorsement and coverage grants contain no language specifically identifying any primary insurance to which it is excess.  Further, as stated above, the inclusion of **"USERS OF GOLFMOBILES (EXCESS BASIS)"** in the heading for "additional insureds" in the Country Club Endorsement does not, by itself, transform otherwise primary coverage afforded to Mrs. Chu to excess coverage.  <u>See</u> <u>Mt. McKinley</u>, 757 F. Supp. 2d at 957.

1    Based on the foregoing, the Court finds that
2  Plaintiff and Defendant both provide primary coverage
3  to Mrs. Chu.  Because Plaintiff and Defendant both
4  insure the same risk at the same level of coverage, the
5  Court now turns to next question: whether the "other
6  insurance" clauses in Plaintiff's and Defendant's
7  Policies conflict.  See Carmel, 126 Cal. App. 4th at
8  509.

9    3.   The "Other Insurance" Provisions Conflict
10    "The 'excess' insurance problem . . . arises when
11  one insurer attempts, through the use of a so-called
12  'other insurance' clause, to reduce a primary coverage
13  obligation into a more limited excess liability."
14  Century Surety, 109 Cal. App. 4th at 1255.  "Insurance
15  policies commonly include 'other insurance' provisions
16  which 'attempt to limit the insurer's liability to the
17  extent that other insurance covers the same risk.'"
18  Id.  There are three subcategories of "other insurance"
19  provisions.  One subcategory, "pro rata" provisions,
20  limit the insurer's liability to "the total proportion
21  that its policy limits bear to the total coverage
22  available to the insured."  Id.  Another subcategory,
23  known as "excess only" clauses, require the exhaustion
24  of other insurance; in effect, this insurer does not
25  provide primary coverage but only acts as an excess
26  insurer.  Id.  A final subcategory of "escape" clauses
27  extinguishes the insurer's liability if the loss is
28  covered by other insurance.  Id. at 1255-56.  "When

'excess only' clauses are found in primary liability
policies, they are treated the same way as escape
clauses." Id. at 1256.

"Where two or more primary insurers' policies
contain excess 'other insurance' clauses purporting to
be excess to each other, the conflicting clauses will
be ignored and the loss prorated among the insurers on
the ground the insured would otherwise be deprived of
protection." Id. at 1257; Olympic Ins., 126 Cal. App.
3d at 599.  Thus, although a true excess insurer - one
that is solely and explicitly an excess insurer
providing only secondary coverage - has no duty to
defend or indemnify until all the underlying primary
coverage is exhausted or otherwise not on the risk,
primary insurers with conflicting excess "other
insurance" clauses can have immediate defense
obligations.  Id.

Here, Plaintiff's Policy has a traditional excess
"other insurance" provision.  This provision states
that "this insurance is excess over any other valid and
collectible insurance except insurance written
specifically to cover as excess over the limits of
liability that apply in this policy." Dkt. # 18-7 at
p.17.  Defendant's Policy has an "other insurance"
provision that states that "this insurance for any
person . . . using . . . a golfmobile is excess over
any other insurance, whether primary, excess,

1   contingent or on any other basis that provides coverage

2   to the user of a golfmobile." Dkt. # 18-8 at p.42.

3        In Fireman's Fund, two insurance companies,

4   Maryland and Fireman's Fund, issued several one year

5   liability insurance policies to a mutual insured.  65

6   Cal. App. 4th at 1287.  Each of the policies of both

7   insurers contained an "other insurance" clause.  Id. at

8   1303.  However, four of the policies issued by

9   Fireman's Fund contained an "excess other insurance"

10  clause that stated "[t]his insurance is excess over any

11  other insurance, whether primary or excess, contingent

12  or on any other basis . . . [t]hat is valid and

13  collectible insurance . . . ."  Id.  The four earlier

14  Fireman's Fund insurance policies, and all of

15  Maryland's policies, contained "other insurance"

16  clauses providing for pro rata computation of loss

17  allocation among insurers, as opposed to excess

18  coverage.  Id.  The court held that, notwithstanding

19  Fireman's Fund's excess "other insurance" provision,

20  Fireman's Fund was contractually obligated to undertake

21  its insured's defense.  Id. at 1306-07.  The court

22  reasoned that "excess-only" provisions in otherwise

23  primary liability insurance policies have been

24  analogized to . . . 'escape' clauses whereby coverage

25  purports to disappear in the presence of other

26  insurance."  Id. at 1305.  The court also recognized

27  that where two or more primary insurers' policies

28  contain excess "other insurance" clauses purporting to

be excess to each other, the conflicting clauses will be ignored and the loss prorated among the insurers on the ground that the insured would otherwise be deprived of protection.  Id. at 1304-05.

Similarly here, the respective "other insurance" provisions of Defendant's and Plaintiff's policies conflict because they both declare the coverage to be "excess only" to any other coverage available to Mrs. Chu.  If both provisions were given effect, Mrs. Chu would be left with no liability coverage from either insurer.  In such a situation, the Court must ignore the conflicting clauses and allocate costs between the Parties.

The facts here are distinguishable from those in Carmel, in which the court held that RLI, an insurance company, was not obligated to contribute to the settlement on an equal basis with Fireman's Fund, because the insuring agreement in the RLI policy made it excess to the coverage that Fireman's Fund provided. 126 Cal. App. 4th at 506.  In Carmel, Fireman's Fund argued that it and RLI were both excess insurers, whose policies contained irreconcilable "other insurance" clauses, while RLI maintained that its policy was "second level excess," which applied "only when all other insurance exhausts, including the Fireman's Fund policy."  Id. at 507.  In finding in favor of RLI, the court reasoned that Fireman's Fund undertook to provide coverage upon exhaustion of *only* the primary insurer's

policy limits, while RLI's insuring agreement obligated
itself to step in only when the limits of *both* the
primary policy and *all other available* coverage -
primary and excess - were exceeded.  <u>Id.</u> at 511.

Here, unlike in <u>Carmel</u>, both Plaintiff's and
Defendant's "other insurance" provisions contain *broad*
language, obligating Plaintiff to provide coverage upon
exhaustion of "any other valid and collectible
insurance," (Carande Decl. ¶ 15, Ex. A), and obligating
Defendant to provide coverage upon exhaustion of "any
other insurance, whether primary, excess, contingent or
on any other basis that provides coverage to the user
of a golfmobile."  (Lake Decl. ¶ 8, Ex. B).  Where, as
here, the provisions are broad, contain conflicting
language, and purport to leave the mutual insured
without any liability coverage from either insurer, the
Court ignores the conflicting excess "other insurance"
clauses and apportions the loss among the insurers.
<u>See</u> <u>Fireman's Fund</u>, 65 Cal. App. 4th at 1304-05.

Because Plaintiff and Defendant are both primary
insurers whose respective "other insurance" provisions
conflict, the Court finds that Defendant has an
obligation to participate in the defense and indemnity
of the Underlying Action.  Thus, the Court **GRANTS in
part** Plaintiff's Motion for Summary Judgment to the
extent that Plaintiff requests that the Court (1) find
that Defendant must immediately participate in the
defense and indemnity of Mrs. Chu as an insurer with

22

respect to the Underlying Action and (2) require
Defendant to reimburse Plaintiff for amounts Plaintiff
expended to defend Mrs. Chu in the Underlying Action in
excess of the amount of Plaintiff's equitable share.
Because the Court finds that Defendant must participate
in the defense and indemnity of Mrs. Chu and is
required to reimburse Plaintiff for defense costs, the
Court **DENIES in part** Defendant's Cross-Motion for
Summary Judgment to the extent Defendant requests that
the Court make a finding that Defendant has no
obligation to share with Plaintiff the cost of
defending Mrs. Chu and in settling the Underlying
Action.

The Court now turns to the third issue – how to
apportion the costs incurred in defending Mrs. Chu and
settling the Underlying Action.

    4.   Equitable Contribution

"The doctrine of equitable contribution grants an
insurer that has paid a claim the right to recover from
a co-insurer, where both insurers were obliged to
indemnify or defend the claim, and where the co-insurer
did not share, or did not sufficiently share, in
covering the claim." Mt. McKinley, 757 F. Supp. 2d at
956 (citing Fireman's Fund, 65 Cal. App. 4th at 1293).
"The purpose of this rule of equity is to accomplish
substantial justice by equalizing the common burden
shared by co-insurers, and to prevent one insurer from

profiting at the expense of others." <u>Id.</u> (quoting <u>Fireman's Fund</u>, 65 Cal. App. 4th at 1279).

Here, the Underlying Action was settled for $200,000. Pl.'s SUF # 9. Plaintiff and Defendant each paid $100,000 toward the settlement. <u>Id.</u> at # 20. Plaintiff also paid all of Ms. Chu's defense costs, which was $11,500. <u>Id.</u> at # 7. Plaintiff requests that the Court allocate costs between Plaintiff and Defendant based upon the relative policy limits of each primary policy. Plaintiff's Policy has a Personal Liability limit of $300,000 (<u>Id.</u> at # 14) and Defendant's Policy has a General Liability Each Occurrence Limit of $1,000,000 (<u>Id.</u> at # 15). Under this approach, Plaintiff argues that Defendant should have contributed $154,000 and Plaintiff should have contributed $46,000 to settle the Underlying Action. Plaintiff also argues that Defendant should have contributed $8,855 and Plaintiff should have contributed $2,645 of the total defense costs. The total amount sought by Plaintiff from Defendant in this Action is $62,855. <u>Id.</u> at # 26.

Defendant, on the other hand, asks the Court to use the "equal shares" method and apportion between each carrier in equal shares. Under this method, Defendant would be required to pay $100,000, the amount it had already contributed to settle the Underlying Action, plus $5,750 in defense costs.

On balance, the Court apportions on an equal shares basis.  Plaintiff argues that in cases involving a conflicting "excess" type "other insurance" clause and an "escape" clause, California courts have ordered the insurers to share pro rata by limits.  Reply 10:4-8. Plaintiff cites to Commerce & Indus. Ins. Co. v. Chubb Custom Ins. Co., 75 Cal. App. 4th 739, 744 (1999) to support the proposition that in all cases of conflict between "excess only" and "escape" clauses, the indemnity and defense costs should be prorated according to the policy limits.  However, the court in Commerce did not firmly state that pro rata allocation was mandated in all situations involving two conflicting "other insurance" provisions.  Rather, the court in Commerce considered the facts of the case and applied the result that "most accurately reflected the equities."  75 Cal. App. 4th at 749.

Further, Plaintiff argues that in cases involving conflicting "excess" type "other insurance" clauses, California courts have ordered the insurers to share pro rata by limits.  However, in such cases, courts are not necessarily required to share pro rata by limits. Rather, "[w]hen a trial court is required to evaluate claims for equitable contribution among multiple liability insurers, each insuring the same insured on the same claim, the trial court exercises its discretion and weighs the equities seeking to attain distributive justice and equity among the mutually

25

1   liable insurers." <u>Axis Surplus Ins. Co. v. Glencoe</u>

2   <u>Ins. Ltd.</u>, 204 Cal. App. 4th 1214, 1231 (2012) (citing

3   <u>Fireman's Fund</u>, 65 Cal. App. 4th at 1293).

4      In keeping with the fundamental principle that a

5   trial court has discretion to select a method of

6   allocating costs among insurers, the courts have

7   adopted a number of different ways of apportioning the

8   burden among multiple insurers. <u>Centennial Ins. Co. v.</u>

9   <u>United States Fire Ins. Co.</u>, 88 Cal. App. 4th 105, 112

10  (2001). These methods include the "time on the risk"

11  method, the "policy limits" method, and the "equal

12  shares" method, among others. <u>Id.</u> at 112-13.

13     Thus, a trial court has discretion to select a

14  method of allocating litigation defense costs among

15  multiple insurers to produce the most equitable results

16  based on the facts and circumstances of the particular

17  case. <u>Id.</u> at 113. The court may consider numerous

18  factors in making its determination, including the

19  nature of the underlying claim, the relationship of the

20  insured to the various insurers, the particulars of

21  each policy, and any other equitable considerations.

22  <u>Axis</u>, 204 Cal. App. 4th at 1231-32.

23     In considering the relationship of the insured to

24  Plaintiff and Defendant, the Court finds that equity

25  requires applying the "equal shares" method to this

26  Action. Plaintiff issued a homeowner's policy to Mr.

27  and Mrs. Chu as the named insureds, who made annual

28  premium payments on that homeowner's policy. Dkt. 18-

7.  Plaintiff's Policy states that "if a claim is made
or a suit is brought against the insured for damages
because of bodily injury . . . caused by an occurrence
to which this coverage applies," Plaintiff will provide
a defense.  Id. at p.11.  Plaintiff's Policy continues,
"[o]ur obligation to defend any claim or suit ends when
the amount we pay for damages resulting from the
occurrence equals our limit of liability," which is
$300,000.  Id.

      In contrast to Plaintiff's Policy, Mrs. Chu is not
a specifically named insured under Defendant's Policy.
Rather, Defendant issued a Commercial General Liability
policy to Temeku Hills as the named insured.  Dkt. #
18-8 at p.2.  Defendant's Policy provides a broad range
of coverages for a broad range of insureds, including
golf pros, tennis pros, members, and users of
golfmobiles.  Id. at p.41.  Thus, Mrs. Chu is afforded
coverage not as a named insured, but as an "additional
insured" as a golf cart user.  Id.  Because Mrs. Chu is
essentially a stranger to the insurance contract
between Defendant and Temeku Hills and does not pay
premiums toward Defendant's Policy, this supports a
finding that the equal shares method is appropriate.

      Further, as Defendant notes, when Defendant pays a
claim against one of its insureds, the total available
policy limits to respond to claims against other
insureds will be depleted.  The policy is subject to a
$2,000,000 General Aggregate Limit which applies to

27

claims against any and all insureds under Defendant's
Policy including Temeku Hills itself, its officers and
employees, as well as golf pros, tennis pros, and
members acting on Temeku Hills' behalf.  Dkt. # 18-8 at
p. 12,25.  By contrast, there is no aggregate limit in
Plaintiff's Policy, and therefore, payment of the
settlement in the Underlying Action has no impact on
the amount of coverage available to Ms. Chu for other
possible liability claims.  See generally Carande Decl.
¶ 15, Ex. A.

    Moreover, the equal shares allocation would be
consistent with the language of both policies.  The
"other insurance" clause in Defendant's main coverage
form provides the following:

    **a.   Primary Insurance**

    This insurance is primary except when **b.** below
    applies.   If this insurance is primary, our
    obligations are not affected unless any of the
    other insurance is also primary.  Then, we will
    share with all that other insurance by the
    method described in **c.** below.

    **c.   Method of Sharing**

    *If all of the other insurance permits*
    *contribution by equal shares, we will follow*
    *this method also.*  Under this approach each
    insurer contributes equal amounts until it has
    paid its applicable limit of insurance or none
    of the loss remains, whichever comes first.

Dkt. # 18-8 at p.26 (emphasis added).  Plaintiff's
Policy is otherwise silent as to the methods of sharing
with other insurers with respect to personal liability
coverage.  See Dkt. 18-7 at p. 11,17.  Thus, by the
plain language of the policies, Plaintiff's Policy
permits contribution by equal shares.  As such, the
sharing provisions in Defendant's Policy should be
followed.  Indeed, Plaintiff fails to address the
provision in Defendant's Policy calling for
contribution by equal shares.  In fact, other than
citing cases in which other courts have ordered the
insurers to share pro rata by limits, Plaintiff fails
to show why allocating costs pro rata by limits would
produce the most equitable results based on the facts
and circumstances of *this* particular case.

Accordingly, based on the relationship of the
mutual insured with Plaintiff and Defendant, as well as
based on the language in Defendant's Policy calling for
contribution by equal shares, the Court finds that
equal shares is the appropriate method of allocation
between the insurers.  Because the Court finds that
equal shares is the appropriate method of allocation,
the Court **GRANTS in part** Defendant's Cross-Motion for
Summary Judgment to the extent Defendant requests that
the Parties share the defense and settlement costs
equally, and **DENIES in part** Plaintiff's Motion for
Summary Judgment to the extent it requests the Court to

allocate costs pro rata based on the respective policy limits.

Here, Plaintiff paid all of Mrs. Chu's $11,500 defense costs incurred in the Underlying Action.  Pl.'s SUF # 7.  Further, Plaintiff and Defendant each contributed $100,000 towards the settlement of the Underlying Action.  Id. at # 20.  The Underlying Action was settled for $200,000.  Id. at # 9.  Defendant, in contributing $100,000, has already contributed its correct equitable share towards the settlement of the Underlying Action.  Thus, pursuant to the equal shares method, Defendant must only reimburse Plaintiff $5,750 - one half of the $11,500 defense costs Plaintiff incurred in the Underlying Action.

### IV. CONCLUSION

Based on the foregoing, the Court **GRANTS in part, DENIES in part** Plaintiff's Motion for Summary Judgment and **GRANTS in part, DENIES in part** Defendant's Motion for Summary Judgment.  Defendant is **ORDERED** to reimburse Plaintiff $5,750 for costs Plaintiff incurred in defending the Underlying Action.

**IT IS SO ORDERED.**

DATED: June 13, 2014

RONALD S.W. LEW

_____
**HONORABLE RONALD S.W. LEW**
Senior U.S. District Judge