||
|---|
| 1 |
| 2 |
| 3 |
| 4 |
| 5 |
| 6 |
| 7 |
| 8 |
| 9 |
| 10 |
| 11 |
| 12 |
| 13 |
| 14 |
| 15 |
| 16 |
| 17 |
| 18 |
| 19 |
| 20 |
| 21 |
| 22 |
| 23 |
| 24 |
| 25 |
| 26 |
| 27 |
| 28 |

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| Residence Mutual Insurance Company, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | CV 13-09141-RSWL (AGRx) **STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW RE: PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** [18] **AND DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT** [20] |
|---|---|---|
|           Plaintiff, | | |
|   v. | | |
| Travelers Indemnity Company of Connecticut and Does 1-10, | | |
|           Defendants. | | |

    After consideration of all the papers submitted pursuant to Plaintiff Residence Mutual Insurance Company's ("Plaintiff") Motion for Summary Judgment [18] and Defendant Travelers Indemnity Company of Connecticut's ("Defendant") Cross-Motion for Summary Judgment [20], the Court makes the following findings of fact and conclusions of law:

1

**UNCONTROVERTED FACTS**

1. Plaintiff issued a Homeowners Policy to Michael H. Chu and Susan Chu as the named insureds ("Plaintiff's Policy"). Pl.'s Statement of Uncontroverted Facts and Conclusions of Law ("Pl.'s SUF") # 1.

2. Plaintiff's Policy has a Personal Liability Limit of $300,000. Id. at # 14.

3. Defendant issued a Commercial General Liability policy to Daeil America Corporation, dba Temeku Hills Golf and Country ("Temeku Hills") as the named insured ("Defendant's Policy"). Id. at # 2.

4. Defendant's Policy has a General Liability Each Occurrence Limit of $1,000,000. Id. at # 15.

5. Mrs. Chu, as a renter or operator of a golf cart at Temeku Hills, was made an additional insured of Defendant's Policy by the Golf or Country Club Facilities Xtend Endorsement ("Country Club Endorsement"). See id. at ## 3, 19.

6. The Country Club Endorsement, "Provisions, B,. Additional Insured - Golf Pros; Tennis Pros; Members: Users of Golfmobiles (Excess Basis)" provision reads as follows: 1. WHO IS AN INSURED (Section II) is amended to include as an insured: (d) any person or organization using or legally responsible for the use of golfmobiles loaned or rented to others by you or your concessionaires, but only with respect to their liability caused by the use of the golfmobiles. Id. at

1  # 19.
2     7. On or about February 18, 2011, Mrs. Chu was
3  driving a golfmobile at Temeku Hills when she allegedly
4  struck and injured Maria Haugh with a golfmobile ("the
5  Golfmobile Accident").  Id. at # 4.
6     8. As a result of the Golfmobile Accident, Maria
7  Haugh filed an action for bodily injury against Mrs.
8  Chu ("Underlying Action").  Id. at # 5.
9     9. Mrs. Chu tendered defense of the Underlying
10 Action to Plaintiff, and Plaintiff agreed to provide a
11 defense and indemnity to Mrs. Chu under Plaintiff's
12 Policy.  Id. at # 6.
13    10. Plaintiff requested that Defendant participate
14 in the defense and indemnity of Mrs. Chu with respect
15 to the Underlying Action, asserting that Defendant
16 provided coverage to Mrs. Chu as a person legally
17 responsible for the use of a golfmobile she rented from
18 Temeku Hills.  Id. at # 10.
19    11. Defendant rejected said request and refused to
20 participate in the defense of Mrs. Chu.  Id. at # 11.
21    12. However, Defendant paid $100,000 towards the
22 settlement of the Underlying Action.  Id. at # 20.
23    13. Plaintiff also paid $100,000 toward the
24 settlement while reserving the right to seek equitable
25 contribution from Defendant in this Action.  Id.
26    14. On February 7, 2014, the Underlying Action was
27 settled for $200,000 and is in the process of being
28 dismissed against Mrs. Chu.  Id. at # 9.

15. Plaintiff paid all of Mrs. Chu's defense costs incurred in the defense of the Underlying Action, which totaled $11,500.  Id. at # 7.

16.  The coverage grant of Plaintiff's Policy under "Section II - Liability Coverages, Coverage E - Personal Liability" provides: "If a claim is made or a suit is brought against an insured for damages because of bodily injury or property damage caused by an occurrence to which this coverage applies, we will: (1) Pay up to our limit of liability for the damages for which the insured is legally liable; and (2) Subject to the insured's compliance with the terms of this policy, and subject to the limits of liability as defined herein, provide a defense at our expense by counsel of our choice, provided that coverage for said claim or suit is afforded by this policy . . . . Our obligation to defend any claim or suit ends when the amount we pay for damages resulting from the occurrence equals our limit of liability.  We may investigate and settle any claim or suit that we decide is appropriate."  Id. at # 18.

17. Under "Section II - Conditions, Paragraph 8, Other Insurance, Coverage E - Personal Liability" of Plaintiff's Policy, Plaintiff's Policy provides Plaintiff's "other insurance" provision as follows: "[t]his insurance is excess over any other valid and collectible insurance except insurance written specifically to cover as excess over the limits of

1 | liability that apply in this policy." Id. at # 17.
2 |     18. The coverage grant of Defendant's Policy under
3 | "Section I - Coverages, Coverage A Bodily Injury and
4 | Property Damage Liability," provides, in pertinent
5 | part: We will pay those sums that the insured becomes
6 | legally obligated to pay as damages because of "bodily
7 | injury" or "property damage" to which this insurance
8 | applies.  We will have the right and duty to defend the
9 | insured against any "suit" seeking those damages.
10 | However, we will have no duty to defend the insured
11 | against any "suit" seeking damages for "bodily injury"
12 | or "property damage" to which this insurance does not
13 | apply . . . We may, at our discretion, investigate any
14 | "occurrence" and settle any claim or "suit" that may
15 | result."  Dkt. # 18-8 at p.16.
16 |     19. Under "Section IV - Commercial General
17 | Liability Conditions, Paragraph 4, Other Insurance," of
18 | Defendant's Policy, Defendant's Policy indicates: "This
19 | insurance is primary except when b. below applies.  If
20 | this insurance is primary, our obligations are not
21 | affected unless any of the other insurance is also
22 | primary.  Then, we will share with all that other
23 | insurance by the method described in c. below."  The
24 | method of sharing described under this section states:
25 | "[i]f all of the other insurance permits contribution
26 | by equal shares, we will follow this method also.
27 | Under this approach, each insurer contributes equal
28 | amounts until it has paid its applicable limit of

1 insurance or none of the loss remains, whichever comes
2 first.  If any of the other insurance does not permit
3 contribution by equal shares, we will contribute by
4 limits.  Under this method, each insurer's share is
5 based on the ratio of its applicable limit of insurance
6 to the total applicable limits of insurance of all
7 insurers."  Id. at p.26-27.

8    20. Under the Country Club Endorsement, Defendant's
9 Policy states that "Section IV, Paragraph 4, Other
10 Insurance" of the Commercial General Liability
11 Conditions is amended to provide that: "[t]his
12 insurance for any person using or legally responsible
13 for the use of a golfmobile is excess over any other
14 insurance, whether primary, excess, contingent, or on
15 any other basis that provides coverage to the user of a
16 golfmobile."  Pl.'s SUF # 19.

17    21. Defendant's Policy declarations do not identify
18 any underlying insurance.  Id. at # 28.

## CONCLUSIONS OF LAW

20    1. A primary insurer generally has a duty to defend
21 its insured.  Nat'l Union Fire Ins. Co. of Pittsburgh,
22 Pa. v. Lawyers Mut. Ins. Co., 885 F. Supp. 202, 205 (S.
23 D. Cal. 1995) (citing Olympic Ins. Co., 126 Cal. App.
24 at 597).

25    2. In contrast, however, an excess insurer
26 generally has no duty to participate in the insured's
27 defense or contribute to a settlement on the insured's
28 behalf until primary coverage has been exhausted.  Id.

1  (citing Nabisco, Inc. v. Transp. Indem. Co., 143 Cal.
2  App. 3d 831, 836 (1983)).
3       3. "When two insurers cover the same level of
4  liability (e.g., both primary or both excess) on the
5  same risk as to the same insured, courts may require
6  each to contribute to the cost of defending the claim
7  or indemnifying the loss." Carmel Dev. Co. v. RLI Ins.
8  Co., 126 Cal. App. 4th 502, 507-08 (2005) (citing Md.
9  Cas. Co. v. Nationwide Mut. Ins. Co., 81 Cal. App. 4th
10 1082, 1089 (2000)).
11      4. In order to determine whether Plaintiff and
12 Defendant provide the same level of coverage to their
13 mutual insured, the Court must engage in a "broader
14 examination of each policy to ascertain the context in
15 which the 'other insurance' provisions appeared." Id.
16 Only if the two policies were insuring the same risk at
17 the same level of coverage should the court proceed to
18 determine whether the "other insurance" clauses
19 conflict and thus require equitable proration. Id.
20 (citing Reliance Nat. Indem. Co. v. Gen. Star Indem.
21 Co., 72 Cal. App. 4th 1063, 1077 (1999)).
22      5. There is a distinction between primary and
23 excess insurance coverage. Am. Cas. Co. v. Gen. Star
24 Indem. Co., 125 Cal. App. 4th 1510, 1521 (2005).
25      6. As explained in American Casualty:
26      *Primary* coverage is insurance coverage whereby,
27      *under the terms of the policy*, liability
28      attaches *immediately* upon the happening of the

1    occurrence that gives rise to the liability . .
2    . "*excess*" or "*secondary*" insurance is coverage
3    whereby, *under the terms of the policy,*
4    liability attaches only after a predetermined
5    amount of primary coverage has been exhausted.
6 Id. (citing Olympic Ins. Co., 126 Cal. App. 3d at 597-
7 98).
8        7. "Excess" insurance is "*secondary* insurance which
9 provides coverage after other *identified* insurance is
10 no longer on the risk." Id.
11       8. "The identification of the underlying primary
12 insurance may be as to (1) a particular policy or
13 policies that are specifically described or (2)
14 underlying coverage provided by a particular and
15 specifically described insurer." Id. (citing Century
16 Sur. Indem. Co. v. United Pac. Ins. Co., 109 Cal. App.
17 4th 1246, 1255 (2003)).
18       9. "In short, excess insurance is insurance that is
19 expressly understood by both the insurer and insured to
20 be secondary to specific underlying coverage which will
21 not begin until after that underlying coverage is
22 exhausted and which does not broaden that underlying
23 coverage." Id.
24       10. Defendant's Policy as to Mrs. Chu is not a true
25 "excess only" policy under California law because there
26 is nothing in Defendant's Policy that states it is
27 excess to a particular policy that is specifically
28 described or excess to underlying coverage provided by

a particular and specifically described insurer. Because nothing in Defendant's Policy states that the coverage afforded to users of golfmobiles was excess over any *specifically identified* underlying insurance, Defendant's Policy affords primary insurance to Mrs. Chu.

11. The inclusion of an "other insurance" clause in an otherwise primary policy will not convert a primary policy into "true" excess coverage. <u>AMHS Ins. Co. v. Mut. Ins. Co. of Ariz.</u>, 258 F.3d 1090, 1093 (9th Cir. 2001).

12. "The 'excess' insurance problem . . . arises when one insurer attempts, through the use of a so-called 'other insurance' clause, to reduce a primary coverage obligation into a more limited excess liability." <u>Century Surety</u>, 109 Cal. App. 4th at 1255.

13. "Insurance policies commonly include 'other insurance' provisions which 'attempt to limit the insurer's liability to the extent that other insurance covers the same risk.'" <u>Id.</u>

14. There are three subcategories of "other insurance" provisions. One subcategory, "pro rata" provisions, limit the insurer's liability to "the total proportion that its policy limits bear to the total coverage available to the insured." <u>Id.</u> Another subcategory, known as "excess only" clauses, require the exhaustion of other insurance; in effect, this insurer does not provide primary coverage but only acts

as an excess insurer. <u>Id.</u> A final subcategory of "escape" clauses extinguishes the insurer's liability if the loss is covered by other insurance. <u>Id.</u> at 1255-56.

15. "When 'excess only' clauses are found in primary liability policies, they are treated the same way as escape clauses." <u>Id.</u> at 1256.

16. "Where two or more primary insurers' policies contain excess 'other insurance' clauses purporting to be excess to each other, the conflicting clauses will be ignored and the loss prorated among the insurers on the ground the insured would otherwise be deprived of protection." <u>Id.</u> at 1257; <u>Olympic Ins.</u>, 126 Cal. App. 3d at 599.

17. Thus, although a true excess insurer - one that is solely and explicitly an excess insurer providing only secondary coverage - has no duty to defend or indemnify until all the underlying primary coverage is exhausted or otherwise not on the risk, primary insurers with conflicting excess "other insurance" clauses can have immediate defense obligations. <u>Id.</u>

18. The respective "other insurance" provisions of Defendant's and Plaintiff's policies conflict because they both declare the coverage to be "excess only" to any other coverage available to Mrs. Chu. In such a situation, the Court ignores the conflicting clauses and allocates costs between the Parties.

19. Because Plaintiff and Defendant are both

primary insurers whose respective "other insurance" provisions conflict, Defendant has an obligation to participate in the defense and indemnity of the Underlying Action.

20. "The doctrine of equitable contribution grants an insurer that has paid a claim the right to recover from a co-insurer, where both insurers were obliged to indemnify or defend the claim, and where the co-insurer did not share, or did not sufficiently share, in covering the claim." Mt. McKinley, 757 F. Supp. 2d at 956 (citing Fireman's Fund, 65 Cal. App. 4th at 1293).

21. "When a trial court is required to evaluate claims for equitable contribution among multiple liability insurers, each insuring the same insured on the same claim, the trial court exercises its discretion and weighs the equities seeking to attain distributive justice and equity among the mutually liable insurers." Axis Surplus Ins. Co. v. Glencoe Ins. Ltd., 204 Cal. App. 4th 1214, 1231 (2012) (citing Fireman's Fund, 65 Cal. App. 4th at 1293).

22. In keeping with the fundamental principle that a trial court has discretion to select a method of allocating costs among insurers, the courts have adopted a number of different ways of apportioning the burden among multiple insurers. Centennial Ins. Co. v. United States Fire Ins. Co., 88 Cal. App. 4th 105, 112 (2001).

23. These methods include the "time on the risk"

method, the "policy limits" method, and the "equal shares" method, among others. Id. at 112-13.

24. Thus, a trial court has discretion to select a method of allocating litigation defense costs among multiple insurers to produce the most equitable results based on the facts and circumstances of the particular case. Id. at 113.

25. The court may consider numerous factors in making its determination, including the nature of the underlying claim, the relationship of the insured to the various insurers, the particulars of each policy, and any other equitable considerations. Axis, 204 Cal. App. 4th at 1231-32.

26. In considering the relationship of the insured to Plaintiff and Defendant, equity requires applying the "equal shares" method to this Action.

**IT IS SO ORDERED.**

DATED: June 13, 2014

                               RONALD S.W. LEW
                               **HONORABLE RONALD S.W. LEW**
                               Senior U.S. District Judge